**INDEPENDENT NURSING HOME, Plaintiff,**

**v.**

**B.F. SIMMONS, in his Official Capacity as Director of the State of Mississippi Division of Medicaid in the Office of the Governor, Defendant.**

**MISSISSIPPI HEALTH CARE COMMISSION, Plaintiff,**

**v.**

**B.F. SIMMONS, in his Official Capacity as Director of the State of Mississippi Division of Medicaid in the Office of the Governor, Defendant.**

Civ. A. Nos. J86–0731(W), J86–0765(W).

United States District Court,
S.D. Mississippi,
Jackson Division.

March 2, 1990.

Barry Cockrell, Richard W. Cowart, John L. Maxey, Jackson, Miss., for plaintiffs.

Sara DeLoach, Asst. Atty. Gen., Jackson, Miss., Thomas E. Childs, Fulton, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

The sole issue before the Court is whether the defendant's failure to provide notice pursuant to federal regulation of the amendment to the Mississippi State Medicaid Plan contained in transmittal 84–36 renders this transmittal invalid and unenforceable. All parties have filed motions for summary judgment directed to this issue. On January 19, 1990, the court held a hearing on the Plaintiff's Motion for Summary Judgment; the Defendant's Cross-Motion for Dismissal, or, in the alternative, for Summary Judgment; the Motion of the Secretary of Health and Human Services, joined as a party defendant, to Dismiss or, in the alternative, for Summary Judgment; and the Plaintiff's Motion for Preliminary Injunction. Following the hearing, the parties announced to the court that negotiations toward settlement were being actively pursued. The parties have since advised the court that settlement is unlikely. Therefore, having heard oral argument of counsel for all parties and the testimony of the witnesses offered in behalf of the parties, and having reviewed the briefs, affidavits as well as other submissions, the court is now prepared to enter its ruling. The court finds that the Motion of the Secretary of Health and Human Services to Dismiss or, in the alternative, for Summary Judgment, is not well taken and is hereby denied. The court further finds that the motion of the plaintiffs for summary judgment is well taken and is hereby granted, and the cross-motion of the defendant for dismissal or, in the alternative, summary judgment is not well taken and is hereby denied. Plaintiff's motion for preliminary injunctive relief is rendered moot upon the filing of this order.

## THE PARTIES

The plaintiffs, the Mississippi Health Care Association (hereinafter MHCA) and the Independent Nursing Home Association (hereinafter INHA) are non-profit Mississippi corporations chartered for the purpose of advancing the interests of member nursing homes licensed to operate in the state of Mississippi. MHCA has been designated by its membership, comprising some 102 nursing homes throughout the state, and INHA has been designated by its membership of some 31 nursing homes as agents empowered to bring the present consolidated lawsuits. The defendant, J. Clinton Smith, M.D., is the director of the State Division of Medicaid (hereinafter DOM) and as such administers the Medicaid Program for the State of Mississippi in accordance with Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq. J. Clinton Smith is the successor to B.F. Simmons who previously held the post and who was the original defendant in this lawsuit.

## BACKGROUND

The Mississippi Medicaid Law, Miss.Code Ann. §§ 43–13–101, et seq., (as amended) establishes a state-wide system which is financed through state appropriations and federal matching funds. The state has elected to participate in a cooperative state and federal assistance program administered under the Medicaid Act and its implementing regulations. Under this Act, Mississippi has devised a reimbursement plan which was submitted to the Secretary of the United States Department of Health and Human Services (hereinafter HHS) for approval. Once approval is obtained, a state then becomes entitled to partial reimbursement of funds from the federal government. As earlier mentioned, one aspect of this procedural policy with regard to amendment of such plans is the issue before the court today. The plaintiffs contend that DOM amended its state plan through transmittal 84–36 without complying with the required federal regulations, in particular, the notice requirement pursuant to 42 C.F.R. 447.205 and failed to sub-

mit required assurances to the Health Care Financing Administration (hereinafter HCFA) as ordered by 42 C.F.R. § 447.253. According to the plaintiffs, this alleged defect in the implementation of the amended plan has prejudiced them in that the guidelines are now more restrictive and have caused an increase of reimbursement levels for depreciable assets upon sale or transfer of nursing home facilities.

In 1984 DOM amended its reimbursement plan through Transmittal 84–9 which amended the methodology used to determine depreciation expenses for long-term care facilities. Public Notice of the changes in 84–9 was provided. Afterwards, the Federal Government passed the Deficit Reduction Act of 1984 (hereinafter DEFRA) which involved substantive changes in the reevaluation of assets. DEFRA amended section 1902(a)(13)(B) of the Social Security Act, 42 U.S.C. § 1396a(a)(13)(B). According to the defendant, in an attempt to bring its state plan into compliance with DEFRA, the state again amended its plan with the issuance of Transmittal 84–36. It is undisputed that public notice was not provided prior to the submission of transmittal 84–36 to the federal agency charged with authority to approve such amendments, the Secretary of the U.S. Department of Health and Human Services through the Health Care Financing Administration. The defendant contends that notice was not required under the applicable federal regulation, arguing that the amendment was but implemented as a means of conforming to "Medicare methods or levels of reimbursement" which under 42 C.F.R. § 447.205(b) would exempt the amendment from the notice requirements. Although contending it was not required to do so, in 1987 the defendant resubmitted the substance of 84–36 in transmittal 87–8 and provided the publication notice in accordance with the provisions of 42 C.F.R. 447.205. Transmittal 87–8 was approved on or about July 7, 1987.

The plaintiffs contend that transmittal 84–36 is unenforceable, ineffective, and invalid based on the failure of DOM to promulgate the plan amendment in compliance with federal regulations. The plaintiffs contend that this transmittal radically changed the method by which allowance for depreciation or capital assets, interest on capital indebtedness and return on capital equity previously were calculated and reimbursed when assets changed hands. Also, plaintiffs contend that substantial changes were made to the recapture of depreciation provision which were contained in transmittal 84–9. Such alterations of state plans, according to the plaintiffs, are not exempt from the federal notice regulations.

## ISSUE

The issue before the court is whether the defendant's failure to provide notice of the amendment to the Mississippi State Medicaid Plan contained in transmittal 84–36 renders unenforceable and void DOM's attempt to recapture depreciation above the levels in place prior to 84–36 for the periods between the effective date of 84–36 and the effective date of transmittal 87–8.

## OVERVIEW OF APPLICABLE LAW

Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., (1974) provides for the establishment of cooperative federal-state programs, commonly known as Medicaid, for the purpose of enabling each state, as far as practicable under the conditions in each state, to furnish medical assistance to certain individuals whose income and resources are insufficient to meet the costs of necessary medical services. States that elect to participate in the program are eligible to receive funds from the federal government if the state establishes a state plan for medical assistance that comports with statutory and regulatory requirements under the Act. *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *Charleston Memorial Hospital v. Conrad,* 693 F.2d 324 (4th Cir. 1982); *Burgess v. Affleck,* 683 F.2d 596 (1st Cir.1982); *SSM Healthcare System v. Reagen,* 681 F.Supp. 625 (W.D.Mo.1988); *Colorado Health Care Association v. Colorado Department of Social Services,* 598 F.Supp. 1400 (D.Col.1984), aff'd, 842 F.2d

1158 (10th Cir.1988). The program is administered by each state in accordance with a state plan that must be approved by the Secretary of Health and Human Services, specifically by the Health Care Financing Administration. The Health Care Financing Administration (hereinafter HCFA) is a part of the Department of Health and Human Services (HHS) and is responsible for approving state medicaid plans. *Nebraska Health Care Association v. Dunning*, 778 F.2d 1291 (8th Cir.1985), cert. den., 479 U.S. 1063, 107 S.Ct. 947, 93 L.Ed.2d 996 (1987). Although participation in the program is voluntary, once a state chooses to participate the state must comply with federal statutory requirements. *Mississippi Hospital Association, Inc. v. Heckler*, 701 F.2d 511 (5th Cir.1983). HCFA's review of state plans is of a cursory nature. "In essence, its review is limited to whether the documentation submitted by the State Medicaid Agency complies with procedural requirements". *Amisub (PSL) v. Colorado Department of Social Services*, 879 F.2d 789 (10th Cir.1989).

Here, plaintiff complains that the defendant failed in its state plan to give satisfactory assurances pursuant to 42 C.F.R. § 447.253[1] that public notice under 42 C.F.R. § 447.205[2] was not required before defendant promulgated transmittal 84–36.

In order to secure approval of a state plan, the state agency is to make "assurances" "satisfactory to the Secretary" that certain findings have been made. *Mary Washington Hospital Inc. v. Fisher*, 635

F.Supp. 891 (E.D.Va.1985). Providing such assurances "is not intended to be burdensome and replaces a previously stricter requirement that the state's methods and standards be 'reviewed and approved' by the Secretary." *Mississippi Hospital Association, Inc. v. Heckler*, 701 F.2d at 520. Moreover, "probing beyond the bottom line to the underlying rate setting methodology is not required under the new standard." *Coalition of Michigan Nursing Homes, Inc. v. Dempsey*, 537 F.Supp. 451 (E.D. Mich.1982). *Also see Mississippi Hospital Association v. Heckler*, 701 F.2d at 521.

The role of HCFA is to ensure that the states submitting the plan amendments comply with the regulations by providing assurances: the agency had no obligation to independently evaluate the accuracy of the state's determination of efficient and economical operations. However, a state's failure to provide the requisite findings, assurances, and additional information with regard to the modification of reimbursement rates under a state Medicaid plan invalidates those modified rates and the state statute under which they were established. *Hillhaven Corporation v. Wisconsin Department of Health*, 634 F.Supp. 1313 (E.D.Wis.1986).

Approval by HCFA does not necessarily mean that the state plan is protected from any challenge of invalidity. In *Mary Washington Hospital v. Fisher*, 635 F.Supp. at 898, where HCFA was satisfied with the state's amended plan and assurances, the court observed nevertheless:

**1.** (a) *State assurances.* In order to receive HCFA approval of a State plan change in payment methods and standards, the Medicaid agency must make assurances satisfactory to HCFA that the requirements set forth in paragraphs (b) through (g) of this section are being met, must submit the related information required by § 447.255 of this subpart, and must comply with all other requirements of this subpart.

(b) *Findings.* Whenever the Medicaid agency makes a change in its methods and standards, but not less often than annually, the agency must make the following findings:

\* \* \* \* \* \*

(f) *Public notice.* The Medicaid agency must provide that it has complied with the public notice requirements in § 447.205 of this part

when it is proposing significant changes to its methods or standards for setting payment rates for inpatient hospital or LTC facility services.

**2.** (a) *When notice is required.* Except as specified in paragraph (b) of this section, the agency must provide public notice of any significant proposed change in its methods and standards for setting payment rates for services.

(b) *When notice is not required.* Notice is not required if—

(1) The change is being made to conform to Medicare methods or levels of reimbursement;

(2) The change is required by court order; or

(3) The change is based on changes in wholesalers' or manufacturers' prices of drugs or materials, if the agency's reimbursement system is based on material cost plus a professional fee.

[t]he plaintiff is apparently correct in its contention that at least one of the assurances given to HCFA (regarding the appeals process) was in error. This fact detracts from any weight that HCFA's resultant approval of the plan might otherwise have carried with the Court.

*Also see West Virginia University Hospitals, Inc. v. Casey,* 701 F.Supp. 496, 514 (M.D.Pa.1988), affirmed in part, reversed in part, and vacated on other grounds, 885 F.2d 11 (3rd Cir.1989), wherein it was argued that HCFA approval of a certain program demonstrated its validity. The court said:

> However, HCFA admits it did not examine DPW's assurances for accuracy or truthfulness or for anything. It merely accepted DPW's statements at face value. This in and of itself would not necessarily undermine DPW's assertion that government approval demonstrates validity, but the fact that the assurances are based only on in-state hospitals does lessen considerably any weight that HCFA's resultant approval of the plan might otherwise have carried with the Court.

*Mary Washington Hospital,* 635 F.Supp. at 898.

The standard of review which accompanies judicial review of these matters is well recognized. In *Mississippi Hospital Association v. Heckler,* 701 F.2d 511, 516 (5th Cir.1983):

> The function and expertise of the federal courts in this sphere is limited, and our role does not extend to reweighing or rethinking the political and financial concerns behind a particular payment plan. A district court can, of course, decide whether federal law has been violated. Otherwise, its review of nonadjudicatory federal agency action is limited to deciding whether the action is arbitrary or capricious .... A presumption of validity attaches to agency action, and the burden of proof rests with the party challenging such action ... [a] district court is entitled to review the actions of a state agency administering federal Medicaid funding as it would review the actions of a federal agency.

With regard to the presumption of the validity of an administrative agency, *also see Alabama Nursing Home Association v. Harris,* 617 F.2d 388 (5th Cir.1980); *Friedman v. Perales,* 668 F.Supp. 216 (S.D.N.Y. 1987), aff'd, 841 F.2d 47 (2nd Cir.1988). Under review by the courts, "the Secretary's interpretation of his own regulations and his determination that a state's action conforms to them is entitled to deference." *Coalition of Michigan Nursing Homes v. Dempsey, supra.* However, as cautioned by *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944):

> Deference to an agency's interpretation ... is not a hard and fast rule. The weight to be given to an administrative interpretation depends upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to control it.

The court in the above case found that a particular rule within an amendment to the Medicaid regulations was not an interpretative rule and thus it could not have been adopted without notice and comment requirements and thus was not legally adopted.

## ANALYSIS AND CONCLUSION

Initially, the state was contacted by the Department of Health and Human Services with regard to plan amendment 84–9. The state was advised to evaluate the plan amendment methods and standards in view of the passage of the Deficit Reduction Act of 1984. The state was advised to evaluate its plan to be sure that it "does not result in capital payments that might exceed the new requirements." (Letter to B.F. Simmons from HHS dated August 30, 1984). Supposedly, in an effort to comply with DEFRA, the state submitted 84–36, which revised the state's methodology for the reimbursement of depreciation, interest, and return on equity for long-term care facilities, where there has been a change in ownership.

On December 27, 1984, the HHS, by letter, informed the state *inter alia,* that "The State has not submitted the assurances and related information required for significant plan amendments as specified at 42 C.F.R. § 447.253." The letter further stated, "the plan amendment should be considered significant and the appropriate assurances specified at 42 C.F.R. § 447.253 should be submitted." The letter informed the state that although the amendment was considered significant, "the effective date of the plan provision will not be affected, since the plan provision is a technical amendment bringing the State plan into compliance with a statutory change." [3] On February 26, 1985, the state forwarded to HCFA additional information with reference to transmittal 84–36 which included the following assurance:

> 6. (a) Public notice is not required as the change is to bring the State in compliance as a result of statutory change.

Confusingly, the letter also supposedly submitted a copy of the public notice that would have been required. Paragraph (h) of the letter stated: "A copy of the public notice is enclosed."

The plan was approved by HCFA. In a HCFA memorandum dated April 10, 1985, from the Division of Alternative Reimbursement Systems to the Division of Financial Operations, reference was made to an earlier memorandum of December 1984 wherein the agency considered the proposed amendment "to be a significant change in the State of Mississippi's methods and standards for establishing payment rates requiring submission of the assurances and related information specified at 42 C.F.R. § 447.250–256." In listing the assurances provided by the state, the notice requirement was not mentioned. The federal agency further stated, "Since these provisions are, in effect, more restrictive than Medicare rules with regard to reevaluation of assets, we recommend acceptance of the State's assurance."

The defendant, during oral argument on this matter, admitted that the State's plan is more restrictive than the requirements set forth under DEFRA. However, the defendant argues that the plan falls within the notice exception because the changes that were made in the depreciation allowance and recapture provisions when considered "in the aggregate" with interest on capital and return on equity factors conform to Medicare methods and levels of reimbursement.

█ The court is unpersuaded by the defendant's argument. Clearly, the federal agency as well as the state have noted that the plan amendment in question is more restrictive than the requirements under DEFRA and further that the amendment constituted a significant change requiring strict compliance with the federal regulations. Further, Bernard J. Truffer, employed by HCFA and charged with review and analysis of amendments to state medicaid plans, testified through affidavit that although he did not believe that notice was required, that subsequent to the approval of 84–36 he revised his opinion "as to whether the Mississippi plan in fact complied with the DEFRA requirements." Upon review of information from the state Medicaid agency to show that the plan did meet DEFRA requirements, Mr. Truffer noted that "the plan appeared to permit Medicaid payment increases following a change in ownership in excess of the Medicare standard." This Truffer attributed to the accounting procedures utilized by the state "which differ from the Medicare rules and which affect the state's compliance with the requirement ... for virtually each facility which changed ownership in the State, the equity payments under the state's system were higher than that permitted under the Medicare rules."

In some instances, the courts have been willing to excuse full compliance with the notice requirements. *See generally, Seniors United for Action v. Ray,* 529 F.Supp. 55 (N.D.Iowa 1981), aff'd, 675 F.2d 186 (8th

---

3. The state also received a similar letter with regard to transmittal 84–9 in that it was informed by HHS that it has not submitted the assurance with regard to notice as required under the federal regulations.

Cir.1982) (where any harm that accompanied a failure to comply with the regulation was remedied by the giving of subsequent notice); *California Association of Bioanalysts v. Rank*, 577 F.Supp. 1342 (C.D.Cal. 1983) (no notice required where changes are mandated by the Legislature, and the changes had already gone through a public process satisfying the objective of the notice requirement). However, where there is a failure to follow the regulatory procedures in enacting certain legislation, the same is rendered void. *See Wisconsin Hospital Association v. Reivitz*, 630 F.Supp. 1015 (E.D.Wis.1986), aff'd in part, vacated in part on other grounds, 820 F.2d 863 (7th Cir.1987).

The court finds that the defendant was required to provide public notice of transmittal 84–36. The defendant has failed to convince this court that notice was not required under the facts of this case. It was recognized by the federal agency approving the plan that the amendment constituted a "significant change." The plan itself is recognized by all parties involved as being more restrictive than DEFRA and, thus, clearly was not in compliance with that Act but was beyond what the Act provided for. The purpose of the notice requirement is to assure public awareness of the proposed change and to allow the interested parties an opportunity to comment on the change whether it be in support or in opposition to the proposal. This the plaintiffs did not have an opportunity to do, and thus the court finds that transmittal 84–36 which altered the method by which DOM computed reevaluation of assets and recapture of depreciation constituted a significant change requiring public notice pursuant to 42 C.F.R. § 447.205. Accordingly, the court finds that transmittal 84–36 is void and of no effect for failure of the defendant to promulgate said amendment in compliance with federal law.

SO ORDERED.