INDEPENDENT NURSING HOME ASSOCIATION, Plaintiff–Appellee,

v.

J. Clinton SMITH, M.D., in his official capacity as Director of the State of Mississippi Division of Medicaid in the Office of the Governor, Defendant–Appellant.

MISSISSIPPI HEALTH CARE ASSOCIATION, Plaintiff–Appellee,

v.

J. Clinton SMITH, M.D. in his official capacity as Director of the State of Mississippi Division of Medicaid in the Office of the Governor, Defendant–Appellant.

No. 90–1382.

United States Court of Appeals,
Fifth Circuit.

July 16, 1991.

Thomas E. Childs, Jr., Russell & Childs, Fulton, Miss., Mitzi E. Dease, Sp. Asst. Atty. Gen., Jackson, Miss., for J. Clinton Smith, M.D.

Barry K. Cockrell, Richard W. Cowart, Watkins, Ludlam & Stennis, Jackson, Miss., for Independent Nursing Home Ass'n.

John L. Maxey, II, S. Mark Wann, Jackson, Miss., for Mississippi Health Care Ass'n.

ON PETITION FOR REHEARING *

Before WISDOM, KING, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

J. Clinton Smith, Director of the Mississippi Division of Medicaid (hereinafter "DOM"), appeals from a judgment below that permanently enjoins him from enforcing a 1984 amendment to Mississippi's state Medicaid plan. The district court issued the injunction on the basis that the

---

* The plaintiff-appellee, Independent Nursing Home Association, has filed a petition for rehearing challenging our decision and opinion dated April 11, 1991. The petition for rehearing is granted and our earlier opinion has been withdrawn and the following opinion has been entered in its place.

1984 amendment was passed without public notice, ostensibly required under 42 CFR § 447.205(a); Smith argues that the amendment fell within an exception to § 447.205(a) and that, therefore, public notice was unnecessary. We find ourselves in agreement with Smith and thus reverse.

## I

The facts that underpin this appeal are somewhat more esoteric than most. DOM is the Mississippi agency responsible for implementing the state's Medicaid program. Like similar agencies in other states, DOM receives a federal subsidy for its Medicaid efforts so long as its Long-Term Care Reimbursement Plan complies with federal requirements. The Health Care Financing Administration division of the Department of Health and Human Services ("HCFA") is the federal agency that oversees state Medicaid plans; as such, HCFA approval of a state's plan—and any amendment thereto—is a prerequisite to the aforementioned federal financial assistance.

In mid–1984, Congress passed the Deficit Reduction Act ("DEFRA"), § 2314 of which modified the federal financial assistance requirements for both Medicare and Medicaid. In the only modification pertinent to this appeal, DEFRA limited the amount of Medicare and Medicaid payments that states could pay out upon the sale or transfer of a nursing home facility. The Medicare amendment took the guise of a subparagraph (O) appended by § 2314 to 42 U.S.C. § 1395x(v)(1) (Supp.1985): It provided (1) that a transferred nursing home must be "re-evaluated" at a cost no higher than the lesser of the acquisition cost paid by the record owner as of July 18, 1984, and the new owner's acquisition cost (*i.e.*, the purchase price); and (2) that when "re-capturing" depreciation from the nursing home transferor, the government was to continue to use the method in place as of June 1, 1984. As for the limitations on Medicaid payments, § 2314 effected these by amending 42 U.S.C. § 1396a(a)(13)(B) (Supp.1985) to read as follows:

(a) Contents. A State plan for medical assistance must—

\* \* \* \* \* \*

(13) Provide—

\* \* \* \* \* \*

(B) that the State shall provide assurances satisfactory to the Secretary that the payment methodology utilized by the State for payments to hospitals, skilled nursing facilities, and intermediate care facilities can reasonably be expected not to increase such payments, solely as a result of a change of ownership, in excess of the increase which would result from the application of [42 U.S.C. § 1395x(v)(1)(O).];

Thus, after DEFRA, a state could guarantee federal funding for its Medicaid work only if it could adequately assure that, in the event of a nursing home transfer, its plan would mete out to the new owner no more of a payment increase than was permissible under Medicare generally and 42 U.S.C. § 1395x(v)(1)(O) specifically.[1]

The adjustments brought on by DEFRA spurred HCFA into action. By letter dated August 30, 1984, it advised DOM of DEFRA's passage and recommended that DOM review its plan in order "to ensure [that it] does not result in capital payments that might exceed the new requirements." Unsurprisingly, DOM did just that, concluding that its plan, itself recently amended by Transmittal 84–9, required further modification if it were to comply with the dictates of 42 U.S.C. § 1396a(a)(13)(B). Accordingly, DOM drafted a new plan amendment, Transmittal 84–36, which in November 1984 it submitted to HCFA for approval.

Essentially, Transmittal 84–36 wrought only two changes, both of which were substantively similar to the Medicare changes made by 42 U.S.C. § 1395x(v)(1)(O). First,

---

1. Although of no bearing to our disposition of this appeal, we note that the plaintiffs, Smith, DOM, and HCFA seem to have interpreted the DEFRA amendment to 42 U.S.C. § 1396a(a)(13)(B) as also requiring that states recapture Medicaid-paid depreciation in accordance with Medicare principles.

84–36 recast DOM's "re-evaluation" of assets formula for nursing home transfers. Under Transmittal 84–9, the value of a nursing home to the new owner was, roughly speaking, the lesser of (1) its purchase price, (2) its fair market value, and (3) the sum of its historical depreciable basis prior to sale and a (variable) portion of the difference between that basis and the home's fair market value. The Transmittal 84–36 method—like the new Medicare method—relegated the new owner to the lower of his purchase price and the acquisition cost borne by the July 18, 1984 record owner. Unlike the 42 U.S.C. § 1395x(v)(1)(O) formula, however, 84–36 included a few extra provisions that DOM believed would further restrain any upward re-evaluation in nursing home value, such as a provision that, for purposes of determining a new owner's interest expense, precluded a new owner from treating as indebtedness any amount greater than the indebtedness that saddled the old owner as of the sale date. Second, DOM's Transmittal drastically altered its plan sections that dealt with "recapture of depreciation," junking the 84–9 system in favor of the very method that DEFRA mandated for Medicare.

On December 27, 1984, HCFA made several written "comments" regarding 84–36 and notified DOM that it was suspending review of the Transmittal pending DOM's response to these comments. One such comment presumably was proffered out of concern that DOM had misconstrued the impact of DEFRA on state Medicaid plans:

... The State should be advised that although it may adopt the Medicare provision as specified at section 1861(v)(1)(O), the Medicaid statute only mandates a limit on the *increase* in the amount a State is allowed to pay for specified capital costs as a result of a change in ownership. The Medicaid statute does not require that the Medicare provisions be adopted by each State and does not mandate a specific methodology that must be used for the revaluation of assets. [Emphasis in original.]

This exhortation notwithstanding, DOM opted to make only minor, unimportant adjustments to its original draft of 84–36. It then submitted this slightly reconstituted version of 84–36 for HCFA sanction, which it received on May 1, 1985.

DOM did not, however, provide public notice before incorporating Transmittal 84–36 into its Medicaid plan. Although a regulation—promulgated and enforced by HCFA—ordinarily requires Medicaid agencies to "provide public notice of any significant change in its methods and standards for setting payment rates for services," 42 CFR § 447.205(a), an HCFA official advised DOM that 84–36 fell within the exception to § 447.205(a) codified at 42 CFR § 447.205(b) and thus demanded no such notice:

(b) *When notice is not required.* Notice is not required if—
(1) The change is being made to conform to Medicare methods or levels of reimbursement;
(2) The change is required by the court order; or
(3) The change is based on changes in wholesalers' or manufacturers' prices of drugs or materials, if the agency's reimbursement system is based on material cost plus a professional fee.

Some years later, the Independent Nursing Home Association and the Mississippi Health Care Association (comprising between them over 130 Mississippi nursing homes) filed the instant suit, seeking *inter alia* injunctive relief barring the enforcement of 84–36.[2] As support for their position, the plaintiffs alleged that DOM's failure to comply with § 447.205(a)'s notice requirement rendered 84–36 unenforceable; Smith and HCFA (joined as a party defendant) countered by arguing that 84–36 fell

---

**2.** In 1987, DOM submitted Transmittal 87–8 to HCFA, which contains all the substantive provisions found in plan amendment 84–36. Unlike 84–36, however, 87–8 was accompanied by public notice. HCFA approved 87–8 on July 7, 1987 and assigned it an effective date of April 1, 1987.

As the foregoing should make clear, this suit questions the validity of plan amendment 84–36, effective from October 1, 1984 to April 1, 1987. It raises no questions about the viability of Transmittal 87–8.

within the § 447.205(b) exception generally and the § 447.205(b)(1) exception specifically, thus rendering notice optional rather than obligatory. After receiving cross motions for summary judgment and conducting a hearing, the district court on March 12, 1990 granted the plaintiffs' motion and entered judgment in their favor. This timely appeal ensued.

## II

If this appeal poses facts bordering on the arcane, its legal puzzle is far less daunting. The disagreement here centers around but one issue: whether Transmittal 84–36 fell within the public notice exception of § 447.205(b)(1). The district court concluded that 84–36 was subject to the notice stricture because, in its words, "the state's plan [as amended by the Transmittal] is more restrictive than the [Medicare] requirements set forth under DEFRA."

We disagree. As an initial matter, the trial court's premise—that 84–36 was more restrictive than the Medicare amendments of 42 U.S.C. § 1395x(v)(1)(O)—appears somewhat dubious. With respect to depreciation, 84–36 is a carbon copy of the DEFRA Medicare recapture provisions; the two differ not in the slightest. As for re-evaluation of assets, the district court acknowledged that DOM's plan amendment has resulted in Medicaid payments in *excess* of those permitted under the DEFRA Medicare provisions.[3] Hence, the finding below that 84–36 was somehow more unkind to nursing home transfers than were comparable Medicare standards seems undermined by reality.

What is more, DOM's plan change was, indeed, "made to conform to Medicare *methods or levels of reimbursement.*" 42 CFR § 447.205(b)(1) (emphasis added). As amended by 84–9, the predecessor plan neither used Medicare methods nor reimbursed at Medicare levels. In contrast, 84–36 and 42 U.S.C. § 1395x(v)(1)(O) share

recapture provisions and utilize reevaluation methods that are similar if nothing else. Additionally, even if 84–36 is in theory more strict than the correlative Medicare subparagraph, the two are functional equivalents given that, as previously noted, reimbursements under 84–36 have been greater than Medicare permits. Finally, as the correspondence between HCFA and DOM indicates, DOM certainly *intended* 84–36 to bring Mississippi's plan closer into sync with Medicare methods and reimbursement levels—which may well be all that § 447.205(b)(1) requires.[4]

## III

In keeping with the foregoing, we hold that Transmittal 84–36 fell within the public notice exception of § 447.205(b)(1). We therefore reverse the judgment of the district court and vacate the order enjoining Smith from enforcing 84–36. We remand this cause to the district court for further proceedings not inconsistent with this opinion, including appropriate action upon Smith's motion for summary judgment.

REVERSED and REMANDED.

---

3. DOM is responsible, of course, for reimbursing to HCFA the excess Medicaid payments.

4. Again, the regulation states that notice is not required if "*[t]he change is being made to con-*

*form* to Medicare methods or levels of reimbursement." 42 CFR § 447.205(b) (emphasis added).