# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CA-00451-SCT

***STATE OF MISSISSIPPI, DIVISION OF MEDICAID IN THE OFFICE OF THE GOVERNOR***

***v.***

***ELTON BEEBE***

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/93 |
| TRIAL JUDGE: | HON. W. O. DILLARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ROBERT E. SANDERS |
| ATTORNEY FOR APPELLEE: | EARL KEYES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED IN PART; APPEAL DENIED IN PART - 1/5/96 |
| MOTION FOR REHEARING FILED: | 1/16/97 |
| MANDATE ISSUED: | 3/4/97 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Elton Beebe brought this cause of action in the Chancery Court of the First Judicial District of Hinds County, seeking to prevent the Division of Medicaid from recapturing $738,858 in depreciation costs originally allocated to his health care facilities. Beebe maintained that the Division of Medicaid improperly interpreted the provision governing the recapture of depreciation applicable to the sale of seven of his health care facilities. Because we find that the Division of Medicaid employed the correct interpretation of the provision regulating depreciation recapture, we reverse the decision of the lower court and render judgment for the Division of Medicaid in the amount of $738, 858.

I.

¶2. Elton Beebe filed a complaint on May 29, 1992 seeking a permanent injunction and declaratory

judgment against the State of Mississippi, Division of Medicaid (DOM), to prevent DOM from obtaining the recapture of depreciation in the amount of $751,352 allegedly owed by Beebe after realizing a capital gain on the sale of seven nursing homes. Arguing that he owed no more than $189,914, he moved for a temporary restraining order and preliminary injunction that same day, whereupon the Chancery Court of the First Judicial District of Hinds County issued an Order granting a preliminary injunction to prevent DOM from taking any further action to collect from Beebe any amount of recapture. Beebe posted bond in the amount of $751,352 pursuant to this Order.

¶3. The Office of the Attorney General was served a copy of the Complaint and Order of Injunction, and on January 27, 1993, the day of trial, Beebe alleged by amended complaint that he was actually owed $62,030 by DOM. DOM amended its answer to claim that Beebe owed $738,858. Following trial, the court entered judgment, finding that it had jurisdiction to settle the administrative dispute, and that DOM was entitled to collect only $338,414 from Beebe. DOM filed its notice of appeal with this Court on April 14, 1993, and Beebe cross-appealed.

II.

**¶4.** In May of 1986, Beebe's wholly owned corporation, Mississippi Extended Care Centers (MECC), sold seven nursing homes for a profit. Because these assets actually appreciated in value, Beebe was required to reimburse the Division of Medicaid any depreciation payments made to him during his ownership of the properties. On March 31, 1987, DOM sent a notice of depreciation recapture which demanded payment from Beebe in the amount of $751, 352. At that time, there were two pending lawsuits in federal court which questioned the validity of the recapture provision, Transmittal 84-36, which applied in the matter at hand. Therefore, DOM held its demand in abeyance until the recapture provision was settled by the other litigation.

¶5. On March 5, 1990, after a ruling invalidating Transmittal 84-36 in *Independent Nursing Home v. Simmons*, 732 F. Supp. 684 (S.D. Miss. 1990), DOM recalculated and made a demand to Beebe for depreciation recapture in the amount of $1,066,398. Beebe gave this demand letter to his CPA, Harry Strohm, who recalculated the amount and determined that Beebe owed only $145,301. Beebe tendered a check to DOM for this amount on March 27, 1990. Several attempts at settlement were made, but DOM indicated that its calculations were the final decision in the matter. On April 30, 1992, after holding the $145,301 check for approximately two years, and the validity of 84-36 was upheld by the Fifth Circuit Court of Appeals, DOM responded with a demand of the original amount, $751, 352. *See Independent Nursing Home Ass'n v. Smith*, 936 F.2d 793 (5th Cir. 1991) (upholding validity of Transmittal 84-36).

¶6. Both parties conceded that the applicable provision regarding recapture of depreciation by DOM was Transmittal 84-36. The dispute in this case instead centers around the proper interpretation of this provision. It was agreed that the amount of gross recapture used by DOM was properly the lesser of the actual gain on the sale, or the accumulated depreciation after the effective date of October 1, 1984, and as a result, the parties started with the same figures for the recapture computation. Beebe, through his CPA, however, maintained that per diem rates for costs should be recalculated after the depreciation recapture was subtracted. DOM's calculations did not recalculate the per diem rates after recapture had been subtracted. DOM's figures essentially sought recapture of

all depreciation originally claimed under allowable costs.

¶7. The difference in the parties' interpretations lies in where the depreciation is subtracted--as a first cost or a last cost. DOM maintains that Beebe's CPA erroneously subtracted the gross recapture amount from the total allowable cost to recompute allowable cost, which essentially considers depreciation as a last cost. Assuming that depreciation is the last cost reimbursed, the amount of recapture is reduced because of the limits placed on allowable costs. DOM maintains that any reference to overpayments includes depreciation--in other words, all depreciation is an overpayment if the seller realizes a gain upon selling the asset. Because depreciation was considered a first cost by DOM, all depreciation costs were subject to recapture. DOM did not initially try to collect the recapture from Beebe's buyer because of the other pending litigation, and then was prevented from doing so by the preliminary injunction granted in this case. Roderick Russ, a CPA with experience in the health care industry, said that the method employed by Beebe's accountant appeared to follow neither the old 84-9, or 84-36, but seemed to be a method containing different aspects of both.

¶8. Beebe's CPA stated that his interpretation lies in 9(b) of 84-36 which states, "The gross depreciation recapture will be based on the percentage of Medicaid utilization, and any resulting overpayment will be recovered." He maintained that this means that only "overpayment" can be recovered, not the entire amount of cost allocated and paid to reimburse for depreciation. Depreciation recapture is definitely "based" on the percentage of Medicaid utilization, but "overpayment" is defined elsewhere in the plan only as payments above allowable costs. At the least, Strohm maintained that the rule was ambiguous in that 84-36 does not adequately define "overpayment." He believed that his interpretation made more sense because depreciation is a noncash expense, meaning that reimbursements from DOM are first allocated to pay a facility's cash expenditures.

III.

¶9. DOM contends that the circuit court had no jurisdiction to hear this dispute because Beebe failed to exhaust the administrative remedies available to him under the Mississippi Medicaid Commission Medical Assistance Program ("Program"). A complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution of his dispute. *NCAA v. Gillard*, 352 So. 2d 1072, 1082-83 (Miss. 1977); *Everitt v. Lovitt*, 192 So. 2d 422, 426 (Miss. 1966); *Davis v. Barr*, 250 Miss. 54, 157 So. 2d 505 (Miss. 1963).

¶10. Section 1-7 of the Program grants the health care provider the right to request a hearing within thirty days after receiving notice of action by DOM. It states further, "[u]nless a timely and proper request for a hearing is received by the Commission from the provider, the findings of the Commission shall be considered a final and binding administrative determination."

¶11. The record reveals that DOM first made demand for payment of $751,352 on March 31, 1987. Because of other pending litigation regarding the validity of the depreciation recapture provision, DOM suspended its attempts to try to collect the money. Beebe then offered $145,301 and tendered a check to DOM for this amount on March 27, 1990. DOM refused to accept the check and indicated that its calculations were the final decision in the matter. On April 30, 1992, upon final settlement of the other litigation, after holding the $145,301 check for approximately two years, DOM responded again with a demand of the original amount of $751, 352. This demand was signed by the Director of

Medicaid.

¶12. DOM fails to point out any other administrative remedies which were available to Beebe. The actions noted above already vastly exceeded the hearing remedy provided in 1-7 of the Program. The record reveals that DOM considered its demand final, and in fact, had not changed the amount demanded for five years starting on March 31, 1987. A request for a hearing would have been futile as more than thirty days had passed from its original demand. All indications by DOM and section 1-7 suggest that the April 30, 1992 demand was a "final and binding administrative determination," even though no hearing was held. Furthermore, at trial, DOM continued to assert the same position it always had taken against Beebe. Because DOM failed to point out any adequate administrative remedy available to Beebe at the time he resorted to the courts, the circuit court properly asserted jurisdiction over this dispute.

IV.

¶13. The determination of the amount of depreciation which DOM was entitled to recapture depends on which interpretation of depreciation recapture under Transmittal 84-36 this Court finds was applicable to the case at hand. Because the chancellor's interpretation of Transmittal 84-36 involved a question of law, this Court is entitled to conduct a *de novo* review. ***Planters Bank & Trust Co. v. Sklar***, 555 So. 2d 1024, 1028 (Miss. 1990). Despite our *de novo* review, we are obligated to respect the agency's interpretation and give deference to it concerning administration of laws under which the agency operates or those which it has responsibility to administer. ***Durant v. Humphreys County Memorial Hosp.***, 587 So. 2d 244, 251 (Miss. 1991); ***Gill v. Mississippi Dep't of Wildlife Conservation***, 574 So. 2d 586, 593 (Miss. 1990); ***Melody Manor Convalescent Ctr. v. Mississippi State Dep't of Health***, 546 So. 2d 972, 974 (Miss. 1989). The party challenging the agency's actions maintains the burden of proof. *Id*. This Court will not substitute its judgment for that of the agency's unless the agency has abused its discretion or acted capriciously, arbitrarily, unreasonably, or in violation of a vested constitutional right. *Id*.

¶14. Transmittal 84-36 provides in pertinent part as follows:

> (9) Recapture of depreciation resulting from the sale of assets.
>
> The sale of depreciable assets, or substantial portion thereof, at a price in excess of the cost of the property as reduced by accumulated depreciation (a gain on sale) calculated in accordance with Medicare (Title XVIII) principles of reimbursement indicates the fact that depreciation used for the purpose of computing allowable costs was greater than the actual economic depreciation. The amount of the recapture will be determined as follows:
>
> a) The gross recapture amount will be the lesser of the actual gain on the sale or the accumulated depreciation after effective date of October 1, 1984.
>
> (b) The gross recapture amounts as determined in (a) above shall be allocated for each fiscal period. **The gross depreciation recapture will be adjusted based on the percentage of Medicaid utilization, and any resulting overpayment will be recovered.**

(emphasis added). Beebe contends that the Court should refer to the section defining "overpayment"

in order to determine the amount of depreciation which can be recaptured. "Overpayment" is defined as the "amount which is paid by the Division of Medicaid to a provider in excess of the amount that is proper [allowable cost]."

¶15. As interpreted by the Court, the dispute in this case is as follows: DOM pays a certain maximum amount of money per day to a health care provider based on the percentage of Medicaid patients in a facility, an allowable return on equity and general inflationary increases in the costs of health care services. This is otherwise known as "allowable cost." Depreciation is one of the expenses included as an allowable cost. A provider does not receive an amount of money greater than allowable cost, so if actual expenses exceed allowable cost, the difference comes out of the provider's pocket.

¶16. Beebe's interpretation of 84-36 recalculates allowable cost by first subtracting the depreciation figure. He then compares the new figure to the amount which was paid to him by DOM. If he was actually paid more than his allowable cost, then this is the amount of "overpayment." Beebe claims that this is the amount of money DOM is entitled to recapture. Because Beebe considers depreciation as the last expense paid by DOM, he asserts that any overpayment represents depreciation and therefore, the recapture of depreciation equals only the overpayment, not the entire amount of depreciation if the depreciation expense makes expenses higher than allowable cost. Hence, "**any resulting overpayment will be recovered**." Again, the result is that only the amount of overpayment is recovered, not the entire amount of expense originally allocated by the provider to depreciation.

¶17. DOM essentially maintains that it is entitled to recover all of the money which was included as depreciation in calculating cost. In other words, DOM calculates the amount of depreciation recapture by considering depreciation as the first expense. It assumes that the provider receives from DOM the full amount for its depreciation. If the provider exceeds its allowable costs, then it is assumed that other expenses such as salaries were not covered by DOM. Therefore, the amount of depreciation recapture is the full amount of money the provider originally allocated to depreciation.

¶18. The difference between the inclusion of depreciation as a first, as opposed to a last expense, is $800,888 -- Beebe maintains that he is owed $62,030, while DOM maintains that it is entitled to recover $738,858. The trial court ruled that Transmittal 84-36 was ambiguous, and therefore, the equitable solution was to split the difference thereby arriving at $338,414 as the amount Beebe owed to DOM.

¶19. The predecessor to Transmittal 84-36 was Transmittal 84-9. In Transmittal 84-9, additional text under 9(b) was expressly deleted with the passage of Transmittal 84-36. Section 9(b) of Transmittal 84-9 provided as follows:

b) The adjusted gross recapture amounts as determined in (a) above shall be allocated for fiscal periods from January 1, 1984, through the date of sale. The adjusted gross recapture amounts shall be allocated to each fiscal period in the same ration as depreciation amounts claimed for the respective portions of the facility. **Allowable costs will be recomputed for each period after depreciation recapture. The recomputed costs will be used to determine if there should be an adjustment to the payment rate,** and any resulting overpayment will be recovered.

(emphasis added). The text providing for the recomputation of allowable costs after depreciation recapture was deleted from 84-36. The continued use of the term"overpayment" in 84-36 does create some confusion, in that DOM considers all costs allocated to depreciation as an overpayment, but the deletion from 84-36 of the section dealing with recomputation of allowable costs without depreciation evidences a clear intent to no longer allow the recomputation of allowable costs as Beebe has done. Notwithstanding the number of witnesses introduced by DOM who maintained DOM's interpretation of the regulation was proper, the obvious omission of the provision from Transmittal 84-36 allowing for recomputation of allowable costs is the strongest evidence in favor of DOM's interpretation of calculating recapture of depreciation.

¶20. Beebe also introduced witnesses on his behalf who maintained that his method of accounting was correct. Beebe's main witness, Strohm, said that his method of accounting was derived from other portions of 84-36. Certainly the disputed section should be interpreted in light of all other provisions of the Act. ***Broadhead v. Monaghan***, 238 Miss. 239, 117 So. 2d 881 (1960). However, there is little support for his interpretation in other provisions of the Act. The Introduction of the Act, allowing for reimbursement of "reasonable costs," was not necessarily supportive of Beebe's position. The Introduction is not rendered contradictory simply because DOM has revised the method in which it recaptures depreciation; the new provision can be interpreted consistently with the Introduction as merely an amendment to the definition of "reasonable cost." As to the other sections of 84-36 cited by Beebe as supportive of his position, they have no relevance to the issue of calculating depreciation recapture.

¶21. The revisions to the specific section dealing with depreciation recapture are the best indication of the new method in which depreciation recapture should be calculated. For this reason, Beebe's strongest argument in his favor is his reliance on the word "overpayment" which was not deleted when 84-36 replaced 84-9. This created some ambiguity in that DOM considered all depreciation an "overpayment," especially where "overpayment" is defined elsewhere as the "amount which is paid by the Division of Medicaid to a provider in excess of the amount that is proper [allowable cost]."

¶22. Ambiguities in a regulation should be construed against the agency where the agency seeks to apply its interpretation on a *post hoc* basis and the regulated party has already adopted and abided by a reasonable interpretation. ***State v. Dep't of Energy***, 507 F. Supp. 1365, 1376 (W.D. La. 1981). However, Beebe's interpretation is not reasonable in light of the fact that the provision allowing for recomputation of allowable costs without depreciation was specifically deleted. Without the section allowing for recomputation of allowable cost, recapture of depreciation is simply "the lesser of the actual gain on the sale or the accumulated depreciation after effective date of October 1, 1984, . . . adjusted based on the percentage of Medicaid utilization." Transmittal 84-36 § 9. The plain language contained in 84-36 mirrors more closely the method of calculation used by DOM. Nor was this definition applied retroactively on a *post hoc* basis as suggested by Beebe, since this is the definition DOM first utilized in 1986 when the regulation first became applicable to Beebe upon sale of his nursing homes.

¶23. Even giving Beebe the benefit of the doubt regarding his interpretation, the opposing sides would have introduced an equal amount of evidence in support of their positions. Given the deference afforded the agency in its interpretation of its own regulations, we conclude that DOM's position should prevail. Any inconsistencies in DOM's method of calculating recapture of

depreciation were related to pending litigation dealing with the overall validity of 84-36. *See **Board of Trustees v. Sullivan***, 763 F. Supp. 178, 184 (S.D. Miss. 1991) (noting that prior inconsistent interpretations of regulation detracts from deference afforded to agency). Although DOM amended its amount of demand at trial by approximately $13,000, this was in recognition of an incorrect figure, not the method in which recapture was calculated. Beebe, on the other hand, has gone from claiming he owed no more than $189,914, to tendering a check to DOM for $145,301, but then claiming at the time of trial he is owed $62,030. There is no persuasive evidence in the record to demonstrate that DOM has applied this statute inconsistently or acted arbitrarily, unreasonably, or capriciously in attempting to enforce this regulation. For this reason, the decision in the court below merely splitting the difference is reversed, and judgment is rendered for DOM in the amount of $738,858. Beebe's cross-appeal is denied.

**¶24. ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS APPEAL: DENIED.**

**PRATHER AND SULLIVAN, P.JJ., ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., AND BANKS, J., CONCUR IN RESULTS ONLY. PITTMAN, J., NOT PARTICIPATING.**