# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01176-COA

CLC OF BILOXI, LLC D/B/A BILOXI                          APPELLANTS
COMMUNITY LIVING CENTER; CLC OF
JACKSON, LLC D/B/A PLEASANT HILLS
COMMUNITY LIVING CENTER; CLC OF
PASCAGOULA, LLC D/B/A PLAZA
COMMUNITY LIVING CENTER; CLC OF
FULTON, LLC D/B/A COURTYARDS
COMMUNITY LIVING CENTER; CLC OF
BOONEVILLE, LLC D/B/A LONGWOOD
COMMUNITY LIVING CENTER; CLC OF
IUKA, LLC D/B/A TISHOMINGO COMMUNITY
LIVING CENTER; AND CLC OF VAIDEN, LLC
D/B/A VAIDEN COMMUNITY LIVING CENTER

v.

MISSISSIPPI DIVISION OF MEDICAID AND                     APPELLEES
ROBERT L. ROBINSON, IN HIS OFFICIAL
CAPACITY AS DIRECTOR OF MISSISSIPPI
DIVISION OF MEDICAID

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2014 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES RAY MOZINGO |
| | HORACE HUNTER TWIFORD IV |
| ATTORNEYS FOR APPELLEES: | DION JEFFERY SHANLEY |
| | JANET MCMURTRAY |
| | WILLIAM CLARK PURDIE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | DISMISSED |
| DISPOSITION: | AFFIRMED AS MODIFIED - 04/26/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**JAMES, J., FOR THE COURT:**

¶1.	This appeal proceeds from a final judgment of the Chancery Court of Hinds County. The plaintiffs in this case are thirteen skilled nursing facility care providers for Medicaid beneficiaries. Community Eldercare Services LLC (CES) is the management organization that operates the thirteen nursing facilities. For the sake of clarity, the thirteen nursing facilities will be collectively referred to as CES in this opinion. CES appeals from the chancery court's final judgment dismissing its case against the Mississippi Division of Medicaid (DOM)[1] with prejudice for failure to exhaust administrative remedies. Finding no error, we affirm; however, we modify the dismissal to be one without prejudice so that CES may proceed with an administrative appeal.

## FACTS AND PROCEDURAL HISTORY

¶2.	The Mississippi Medicaid State Plan (State Plan) describes the nature and scope of Mississippi's Medicaid Program. Attachment 4.19D of the State Plan contains guidelines for the reimbursement for medical-assistance beneficiaries of long-term care facilities. "While it is recognized that some providers will incur costs in excess of the reimbursement rate, the objective of [the State Plan] is to reimburse providers at a rate that is reasonable and adequate to meet the costs that must be incurred by efficiently and economically operating nursing facilities that comply with all requirements of participation in the Medicaid program." State Plan, Attachment 4-19D. As participants in the Medicaid program, CES receives reimbursement from Medicaid for providing skilled nursing services to Medicaid

---

[1] Robert L. Robinson was also named as a defendant in his official capacity as the director of DOM. The defendants will be referred to as DOM in this opinion.

beneficiaries based on a predetermined per diem rate. "Costs included in the per diem rate will be those necessary to be incurred by efficiently and economically operated nursing facilities." State Plan, Attachment 4.19D, 1-1.

¶3.     In order to reimburse the providers of skilled nursing services, DOM requires that the providers submit cost reports after the conclusion of each reporting year. DOM then performs a desk review of the cost reports. The objective of the desk review is to evaluate the necessity and reasonableness of the provider's costs in order to determine the allowable costs used in the calculation of the prospective per diem rate. State Plan, Attachment 4.19D, 1-3(I). If Medicaid determines that any of the costs included in the cost reports are not necessary or reasonable, it makes an adjustment and removes that amount from the provider's standard per diem rate. After the desk review, Medicaid sets the provider's rates prospectively two years with an effective date of January 1. For example, the 2010 per diem rates would have been based on the 2008 cost reports.

¶4.     On October 26, 2009, following a desk review, DOM advised CES that it had disallowed the interest component of CES's 2008 cost reports. No other costs in the 2008 cost reports were disallowed. On November 24, 2009, CES contested the disallowance of their interest costs via letter to DOM, through counsel, requesting an appeal and administrative hearing. The letter stated:

> We hereby request an appeal and hearing pursuant to Mississippi Code Annotated section 43-13-121 [(Rev. 2015)]; Section 7.06, Administrative Hearings for Providers, of the Division of Medicaid, State of Mississippi Provider Policy Manual; and Section 1-7 of Attachment 4-19-D, page 36, entitled Appeals and Sanctions, before the Division of Medicaid for the issue described herein.

3

¶5. An administrative hearing was held before a hearing officer appointed by the executive director. The hearing officer denied CES's challenge of DOM's disallowance of the interest costs. On appeal, the executive director adopted the hearing officer's recommendation disallowing the interest costs. CES appealed from the executive director's final decision to the Hinds County Chancery Court.[2]

¶6. On January 29, 2010, DOM notified CES that the prospective rates for 2010 were being stayed at the same level they had been for 2009, based on the 2007 cost reports and desk reviews. DOM informed CES that the rate stay/freeze was based on Section 1-7(A) of Attachment 4.19D of the State Plan, which provides: "The action of the Division of Medicaid under review shall be stayed until all administrative proceedings have been exhausted."[3]

¶7. On March 11, 2010, CES, though counsel, responded to DOM's notice of the rate freeze. CES contested the rate freeze, and demanded in its letter to DOM:

> If we cannot reach a resolution in this matter within thirty (30) days of the date of this letter, the Providers will seek other measures to ensure the set rate takes into account the most recent and reliable data relating to the actual costs incurred by each of the Providers. Therefore, should a satisfactory resolution not be reached within this time period, we are prepared to file suit seeking an

---

[2] In chancery court, DOM filed a motion to dismiss based on lack of subject-matter jurisdiction. *Miss. Div. of Medicaid v. Alliance Health Ctr.*, 174 So. 3d 254, 256 (¶3) (Miss. 2015). The chancery court denied the motion, and DOM filed a petition for interlocutory review. *Id*. The Mississippi Supreme Court granted an interlocutory appeal. *Id*. The court affirmed and remanded the case to chancery court for further proceedings. *Id*. at 263 (¶26). This case remains pending in chancery court.

[3] The DOM rate freeze was compounded when the Mississippi Legislature implemented a state-wide rate freeze at the 2010 per diem rate for all nursing facilities. On April 23, 2013, CES filed a separate action in United States District Court for the Northern District of Mississippi challenging the legislative freeze, which is pending. *Cmty. Eldercare Services LLC v. Miss. Div. of Medicaid*, Cause No. 1:13:CV-82-M-S.

injunction against Medicaid to have the Providers' rate set at the amount determined by Medicaid in the desk reviews of the 2008 cost reports and also seek interest on the amounts wrongfully withheld from each Provider.

¶8. Instead of seeking an administrative appeal of the DOM rate freeze as CES had done for the interest-cost dispute, CES filed an original action in chancery court on May 4, 2010, seeking injunctive relief and a declaratory judgment against DOM. On June 3, 2010, in lieu of an answer, DOM filed a motion to dismiss or, in the alternative, for summary judgment, arguing that the chancery court lacked jurisdiction due to CES's failure to exhaust its administrative remedies before seeking relief in the chancery court. CES did not respond to DOM's motion. On August 22, 2011, the chancery clerk entered a notice of clerk's motion to dismiss for want of prosecution under Mississippi Rule of Civil Procedure 41(d)(1). The notice stated that no action of record had been taken in the case since July 23, 2010. On October 12, 2011, the chancery court entered an order dismissing the case without prejudice under Mississippi Rule of Civil Procedure 41(d).

¶9. On December 22, 2011, CES filed a motion to reinstate the case. CES stated that on July 23, 2010, the undersigned counsel was substituted as CES's counsel of record. New counsel of record for CES claimed that he did not receive notice of the Rule 41 dismissal until October 2011 when he "contacted the [c]lerk in an effort to set [DOM]'s [m]otion to move the matter forward." On January 19, 2012, the chancery court entered an order reinstating the case. On February 23, 2012, DOM filed a motion to set a hearing for its motion to dismiss or, in the alternative, for summary judgment. As of that filing, CES had not responded to DOM's motion. It was not until April 4, 2012, that CES filed a response

5

to DOM's motion.[4]

¶10.    After a hearing was held on the motion, the chancery court entered an order on May 16, 2012, denying DOM's motion. The chancery court treated DOM's motion as a motion for summary judgment, and determined that DOM's "assertions of failure to exhaust administrative appeals . . . involve[d] a careful review of statutory schemes and the State Plan in light of the facts upon which the parties simply disagree[d]." Namely, the chancery court specified that DOM had alleged that the State Plan provided an administrative appeal for CES's claims while CES had alleged that there was no administrative appeal provided by the State Plan for its claims. DOM filed a petition for an interlocutory appeal from the chancery court's order. On August 8, 2012, the Mississippi Supreme Court denied the petition for interlocutory appeal. *Div. of Medicaid v. CLC of Biloxi LLC*, 2012-M-00838-SCT.

¶11.    The case proceeded to trial, which commenced on December 11, 2013. At the close of CES's case, DOM moved for a judgment as a matter of law under the exhaustion-of-administrative-remedies doctrine. The chancery court denied the motion, and DOM presented its case. DOM renewed its motion at the close of its case. The chancery court allowed the parties to submit additional briefing on the issue of exhaustion of administrative remedies.

¶12.    After the briefing was completed, the chancery court granted DOM's motion for a

---

[4] No response stamped "filed" on April 4, 2012, appears in the record. However, the record was supplemented adding CES's response to DOM's motion to dismiss or, in the alternative, for summary judgment. This response was stamped "filed" November 6, 2014. However, CES's response was signed by the undersigned attorney on April 4, 2012. The Court presumes that CES's response was filed on or about April 4, 2012, because DOM filed a rebuttal to CES's response on May 14, 2012.

judgment as a matter of law. The chancery court noted that on two prior occasions, DOM moved for a judgment as a matter of law; however, "out of an abundance of caution, it denied the motions and allowed [the] Plaintiffs to proceed in their attempts to establish [the chancery court's] jurisdiction in this matter." Without addressing the merits of CES's claims, the chancery court dismissed the case with prejudice finding that CES failed to exhaust administrative remedies. We agree. However, we modify the dismissal to be one without prejudice so that CES may proceed with a proper administrative appeal.

## STANDARD OF REVIEW

¶13.    The appeal of the chancery court's dismissal for failure to exhaust administrative remedies presents a jurisdictional question. *Town of Bolton v. Chevron Oil Co.*, 919 So. 2d 1101, 1104 (¶9) (Miss. Ct. App. 2005). Jurisdiction is a question of law, which is reviewed de novo. *Derr Plantation Inc. v. Swarek*, 14 So. 3d 711, 715 (¶8) (Miss. 2009).

## DISCUSSION

¶14.    CES's arguments on appeal largely seek to address the merits of the case. That is, whether DOM is unlawfully withholding sums due and owing to CES. But we must determine whether there was an adequate administrative remedy available to CES, and if so, whether CES should be excused from pursuing an administrative remedy based on exceptions to the exhaustion-of-administrative-remedies doctrine.

¶15.    It is well settled that "[a] complainant must exhaust available administrative remedies before resorting to the courts for resolution of his dispute." *State v. Beebe*, 687 So. 2d 702, 704 (Miss. 1996). However, when no adequate administrative remedy is available,

7

exhaustion is not required. *Town of Bolton*, 919 So. 2d at 1105 (¶10).

¶16. DOM's position is that it acted under the authority of the State Plan when it implemented the rate freeze pending the final resolution of the dispute relating to the disallowed interest costs. DOM argues that Attachment 4.19D of the State Plan authorized the rate freeze. Attachment 4.19D of the State Plan provides: "The action of the Division of Medicaid under review shall be stayed until all administrative proceedings have been exhausted." State Plan, Attachment 4.19D, 1-7(A). CES argues that DOM was not authorized to implement this rate freeze under the State Plan. Aggrieved by DOM's action, CES instituted an original action in chancery court.

¶17. Attachment 4.19D of the State Plan mandates that disputes shall be taken in accordance with the administrative hearing procedures set out in the Medicaid policy. Section 1-7, entitled "Appeals and Sanctions," of Attachment 4.19D of the State Plan reads, in pertinent part:

> A. Appeal Procedures
>
> . . . .
>
> The provider may appeal the decision of the Division of Medicaid in matters related to cost reports, including, but not limited to, allowable costs and cost adjustments resulting from desk reviews and audits in accordance with Medicaid policy.
>
> . . . .
>
> Appeals by nursing facility providers involving any issues other than those specified above in this section shall be taken in accordance with the administrative hearing procedures set forth in Medicaid policy.

¶18. Thus, the appeal procedure of Attachment 4.19D necessarily includes disputes not

8

limited to allowable costs and cost adjustments such as the interest cost dispute, but would also include any dispute other than those specifically enumerated. Attachment 4.19D mandates that these disputes shall be taken in accordance with the procedures set out in Medicaid policy. Section 7.06 of Medicaid's Provider Policy Manual entitled "Administrative Hearings for Providers," contains a detailed administrative appeals process available to providers. Section 7.06 of the manual states, in relevant part:

> According to the provisions of Section 43-13-121 of the Mississippi Code of 1972, as amended, and the applicable federal statutes and regulations, administrative hearings shall be available to providers of services participating in the Mississippi Medicaid. These hearings are for providers who are dissatisfied with the final administrative decisions of the DOM relating to disallowances, withholding of funds, refusals in the renewal of a provider agreement, terminations of provider agreements, suspensions of provider participation or matters relating to payment rates or reimbursement if not previously considered by DOM under Public Notice or Public Hearing Procedures.

¶19. Under Section 7.06, the executive director designates a member of the DOM staff to serve as a hearing officer to hear an appeal. The hearing officer has the authority to issue subpoenas; administer oaths; compel the attendance and testimony of witnesses; require the production of books, papers, documents, and other evidence; preserve and enforce order during the hearing; and to do all things conformable to law and Medicaid regulations which may be necessary to enable him/her to effectively discharge his/her duties as a hearing officer. *See* Miss. Code Ann. § 43-13-121(4).

¶20. Under Section 7.06, the hearing officer is also authorized to call informal, status, or prehearing conferences, and to invite stipulations of the parties. The providers are allowed to be represented by counsel, present testimony and evidence, and cross-examine witnesses.

9

An accurate record of the hearing procedures must be maintained. After hearing the matter, the hearing officer makes a recommendation in writing containing findings of fact and a determination of the issues, which is presented to the executive director. The executive director then may sustain or reject the recommendations of the hearing officer upon a review of the proceedings, or remand the matter to the hearing officer to take additional evidence or testimony.

¶21. Section 7.06 also contains a catch-all provision for disputed matters that are not specifically enumerated:

> Any specific matter or grievance necessitating an administrative hearing or an appeal not otherwise provided under agency policy shall be afforded under the Administrative Hearing Procedures for Providers as outlined in this section. If the specific time frames for such a unique matter relating to the requesting, granting, and concluding of the hearing is contrary to the time frames as set out in the general administrative procedures above, the specific time frames will then govern over the time frames as set out within these procedures.

¶22. Based on the foregoing provisions of the State Plan and Policy Manual, CES had an administrative remedy available to challenge the DOM rate freeze. At trial, Margaret King, deputy administrator of finance and former director of reimbursement of DOM, testified that CES could have appealed the rate freeze administratively, to be heard by a hearing officer, and ultimately the executive director. Medgar Austin, deputy administrator of DOM, echoed King's testimony via affidavit. However, instead of seeking available administrative relief, CES chose to bypass an administrative appeal and institute an original action in chancery court. CES previously sought proper administrative relief when it demanded an appeal and sought an administrative hearing on the disputed interest-costs disallowance that it contended

10

was improper. Indeed, CES was familiar with the proper appeals process as evidenced by its letter dated November 24, 2009, regarding the interest-costs dispute.

¶23.    Accordingly, we conclude that CES had an administrative remedy available allowing the opportunity to challenge DOM's action through an administrative-appeal process as set out in the State Plan and Policy Manual before resorting to the chancery court for relief. Having found that CES had an administrative remedy available, now we must determine whether the CES should be excused from exhausting administrative remedies based on some exception to the exhaustion doctrine.

¶24.    "The exhaustion doctrine is not without its exceptions." *Pub. Emps. Ret. Sys. of Miss. v. Hawkins*, 781 So. 2d 899, 906 (¶31) (Miss. 2001). The Mississippi Supreme Court has identified three variables in determining whether to require exhaustion: (1) extent of the injury from pursuit of administrative remedies; (2) degree of apparent clarity or doubt about administrative jurisdiction; (3) and involvement of specialized administrative understanding in the question of jurisdiction. *Town of Bolton*, 919 So. 2d at 1105 (¶10) (citing *Campbell Sixty-Six Express Inc. v. J. & G. Express Inc.*, 141 So. 2d 720, 726 (Miss. 1962)). The court has also set out that "factors which weigh against applying the doctrine of exhaustion include: the pursuit of the administrative remedy would result in irreparable harm; the agency clearly lacks jurisdiction; the agency's position is clearly illegal; the dispositive question is one of law; exhaustion would be futile; and comparatively, the action can be disposed of with less expense and more efficiently in the judicial arena." *Id.* (citing *Hawkins*, 781 So. 2d at 906 (¶31)).

¶25. As for the extent of injury from pursuit of administrative remedies, we agree with the chancery court that the reimbursement amounts withheld by DOM, although considerable in nature, will be ultimately paid to CES pending the resolution of the interest dispute. For reasons explained above, we find that there is no doubt or lack of clarity about administrative jurisdiction based on the administrative appeals process set out in the State Plan and Policy Manual as authorized by section 43-13-121. We also agree with the chancery court that, although the dispositive question of DOM's authority under the State Plan is one of law, the "expertise and experience of the agency are invaluable in considering the construction of the rate freeze rule and the application to [CES]." Thus, we cannot say that DOM's position is "clearly illegal" based on the State Plan.

¶26. Here, the pursuit of an administrative remedy will not result in irreparable harm. Irreparable harm is "[a]n injury that cannot be adequately measured or compensated by money and is therefore often considered remediable by injunction." Black's Law Dictionary 856 (9th ed. 2009). "Irreparable damages in the context of an injunction are defined as damages for which no certain pecuniary standard exists for measurement." *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1199 n.8 (Miss. 2003) (citing Black's Law Dictionary 391 (6th ed. 1990)). Again, monetary damages incurred as a result of the DOM rate freeze may be ascertained after the resolution of the pending disputes.

¶27. We also are unpersuaded by an irreparable-harm argument by CES as evidenced by its lack of effort in moving the case along in chancery court, which ultimately was dismissed for want of prosecution. Furthermore, nearly two years passed before CES responded to

12

DOM's motion to dismiss and/or motion for summary judgment. The pace of this action, which was initially filed on May 4, 2010, is evidence that it could not be disposed of with less expense and more efficiently in the judicial arena. Exhaustion would not be futile in this case. Although CES argues that the executive director's decision to implement the rate freeze would not change, that speculation cannot be certain, as no administrative hearing along with a hearing officer's recommendation was ever made to the executive director. For these reasons, we find that the variables and factors as set out in *Town of Bolton* do not weigh against exhaustion.

¶28.    The dissent relies on *Alliance Health Center* in support of its opinion that the chancery court has jurisdiction to hear CES's case. However, in *Alliance Health Center*, each of the plaintiff "provider[s] used DOM's administrative-appeal procedures to appeal" its dispute with DOM regarding its recoupment decisions. *All. Health Ctr.*, 174 So. 3d at 256 (¶2). In each appeal, a formal hearing occurred before a DOM hearing officer, who had subpoena power and ruled on objections. *Id*. at 260 (¶17). The providers were represented by counsel, presented their cases with live witnesses and documentary evidence, and were able to cross-examine witnesses. *Id.* Following the formal hearings, the hearing officers entered opinions affirming DOM's recoupment decisions. *Id.* at 256 (¶3). The executive director then adopted the decisions of the hearing officers in each case. *Id.* The providers then appealed to the chancery court, and "[t]he full records of the proceedings were available for review[.]" *Id*. at 260 (¶17). Unlike the providers in *Alliance Health Center*, CES did not exhaust the administrative-appeal procedures; rather, it filed an original action in chancery court.

13

¶29. CES also argues on appeal that it is entitled to benefits under the Prompt Payment Act, Mississippi Code Annotated section 31-7-301 et seq. (Rev. 2010). We find the issue of exhaustion to be dispositive; therefore, we do not reach the merits of this argument. Also, this claim was never pled, and was not addressed by the chancery court. *See Stephens v. Miller*, 970 So. 2d 225, 227 (¶9) (Miss. Ct. App. 2007) ("We need not consider matters raised for the first time on appeal, which practice would have the practical effect of depriving the trial court of the opportunity to first rule on the issue, so that we can then review such trial court ruling under the appropriate standard of review.").

## CONCLUSION

¶30. Because we find that CES failed to exhaust its administrative remedies before resorting to the chancery court and that no exception to the exhaustion doctrine applies, we affirm the final judgment of the chancery court. However, we modify the dismissal to be one without prejudice so that CES may proceed properly with an administrative appeal.

¶31. **THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED AS MODIFIED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, FAIR AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J. WILSON, J., NOT PARTICIPATING.**

**CARLTON, J., DISSENTING:**

¶32. I respectfully dissent. The majority errs in affirming the chancellor's dismissal of the action filed by CES. *See Miss. Div. of Medicaid v. All. Health Ctr.*, 174 So. 3d 254, 262 (¶21) (Miss. 2015) ("Our common law holds that chancery court jurisdiction exists to review

14

an administrative agency decision 'where there is no statutory scheme for appeal from a decision of a state board or agency . . . .'" (citation omitted)).

¶33.    DOM similarly argued in *Alliance Health Center* that the involved hospitals failed to exhaust administrative requirements and remedies.  *Id.* at 258 (¶10).   However, the Mississippi Supreme Court found DOM's recoupment decisions to be quasijudicial.  *Id.* at 260 (¶17).    Additionally, the supreme court stated DOM's decisions pertained to reimbursement rates for 2001, which required application of law, rules, and regulations to the facts instead of rule-making or fixing rates for the future.  *Id.* at 260-61 (¶17).  The supreme court found that such cases presented questions of law and that relief was available by writ of certiorari or by chancery court review.  *Id.* at 262 (¶20).  I would therefore remand the present case to chancery court for further proceedings.[5]

**GRIFFIS, P.J., JOINS THIS OPINION.**

---

[5] *See* Alan E. Schabes et al., 2006 Health Law Handbook § 6:7 (Alice G. Gosfield ed.), Westlaw (database updated May 2013) (discussing that state agencies set state Medicaid reimbursement rates and that state courts serve as a check on the state agencies' power by determining the lawfulness of the methodology of a challenged reimbursement rate to see whether the rate was irrational, arbitrary, capricious, or unlawful). *See also Visiting Nurse Serv. of N.Y. Home Care v. N.Y. State Dep't of Health*, 786 N.Y.S.2d 623, 625-26 (N.Y. App. Div. 2004) (finding that the provider possessed a property interest in Medicaid payments and was entitled to procedural due process rights and that the department of health was not entitled to recoup the payments until after a final determination based on a hearing).